**CONSUMERS' CO. v. GOODRICH TRANS-IT CO.**

**FIRST UNION TRUST & SAVINGS BANK v. CONSUMERS CO. et al.**

No. 4627.

Circuit Court of Appeals, Seventh Circuit.

Dec. 4, 1931.

Rehearing Denied Jan. 2, 1932.

Beverly B. Vedder and Thomas C. Strachan, Jr., both of Chicago, Ill., for appellant.

Edwin W. Sims, of Chicago, Ill., Franklin J. Stransky, of Savannah, Ill., Walter Brewer, of Chicago, Ill., Cassius Poust, of Sycamore, Ill., and James P. Carey, Jr., of Chicago, Ill., for appellee receivers.

Willard F. Keeney and Julius H. Amberg, both of Grand Rapids, Mich., for appellee Goodrich Transit Co.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This appeal is from a decree denying appellant's two petitions, one for permission to foreclose a mortgage in admiralty and the other to have the earnings of the steamship Alabama segregated and held for the benefit of the first mortgage bondholders for whom appellant was acting as trustee.

The facts: At the instigation of Consumers Company, a large creditor, receivers

were duly appointed for the Goodrich Transit Company, hereinafter called the debtor company. The property of this company originally consisted of six steamships (of which only one, the Alabama, was within the jurisdiction of the court appointing the receivers), besides wharves, docks, and other property used in connection with the transportation business on the Great Lakes. Previously, a mortgage had been executed by the debtor company to secure a loan of $700,000, in which mortgage appellant was named as trustee. Other steamships were covered by this mortgage, but two of them had been sold, and the proceeds of such sale, as well as other payments, had been applied on the mortgage and reduced it to approximately $181,000. Necessary steps had been taken by appellant to make the mortgage lien a preferred ship mortgage under the provisions of the Ship Mortgage Act of 1920 (46 USCA § 911 et seq.). From 1923 the debtor company's business had been conducted at a loss. While the extent of these losses is a matter of some dispute, it is fair to say that the debtor company's business was increasingly unprofitable, the average loss for several years preceding the receivership exceeding $150,000, and a substantial sum was lost during the period of operation by the receivers up to the time when the petitions were filed. The order appointing the receivers, dated November 13, 1930, directed them to forthwith take possession of the property of the debtor company and to preserve, manage, maintain, and operate the steamships and other property, to discharge all public duties obligatory upon it, to employ, discharge, and fix the compensation of all officers, agents, and employees, and, speaking generally, to operate the business as a going concern. The order reserved to the court for later consideration and action all of the matters set forth in the complaint, including matters relating to preference and allowance of claims of the creditors, secured or unsecured, and the amount and the priority thereof. Thereafter, upon petition of the receivers, the court authorized the issuance of receivers' certificates, not exceeding $100,-000, to be payable on or before October 1, 1931. Receivers' certificates were thereafter issued and sold, and some were outstanding when the appellant's petitions were heard. These certificates were made a lien upon the property of the debtor prior to the rights and interests of all parties, excepting only the existing liens of record.

Appellant's first petition set forth the execution of its mortgage and the various ac-

tions which the mortgagee took, which resulted in said mortgage being duly recorded and made a preferred mortgage under the Ship Mortgage Act of 1920 (46 USCA § 911 et seq.), and prayed an order permitting said petitioner to file its libel in the admiralty jurisdiction of the court and proceed thereunder to foreclose and sell the said steamship Alabama, which was within the jurisdiction of this court.

The second petition set forth the facts showing the loss of profitable business by the Goodrich Transit Company and the impairment of the security of the mortgage, and prayed that receivers be directed to segregate and set aside, as a separate fund, all income received from the operation of the steamship Alabama from and after May 19, 1931; that all sums over and above the cost of operation be held subject to the order of the court until it is determined whether a sufficient price be obtained from the sale in admiralty to discharge the claims of the petitioner under said preferred ship mortgage.

Appellees answered both petitions, and set forth facts showing, or tending to show, that the assets covered by the mortgage were adequate to secure the appellant's mortgage, and also denied that the receivers' conduct of the debtor company's business would be at a loss or would impair the security of said mortgage. The figures showing gross receipts and expenditures were set forth, and a large part of the losses sustained were attributed to avoidable operating costs.

In disposing of the two petitions, the court said:[1]

"There is no clear and satisfactory showing that the holders of bonds secured by the first mortgage have scant security for the payment of their lien. On the other hand, it is strongly urged that the pledged vessels are more than ample security for the payment of the indebtedness and therefore it is inadvisable, at this time, to permit the vessel to be sold and to deprive the junior lienholders as well as the general creditors of a possible fund out of which their indebtedness may be paid. Moreover, the Alabama is now being operated as a part of the fleet operated by the receiver and to take the Alabama out of operation at the height of the transportation season would disrupt the receivership.

"The court, therefore, withholds for a reasonable time the right of the petitioner to sell the Alabama in admiralty."

In its memorandum, the court also said:

---

[1] In memorandum.

"There is no clear and convincing evidence that the Steamship Alabama, together with the other steamships covered by the preferred ship mortgage, is not ample security for the principal and interest on the indebtedness secured thereby. Moreover, the income and proceeds from the operation of the Alabama are not covered by the mortgage. Also, heretofore, the receiver has been granted authority to issue · receiver certificates which are a lien upon the proceeds and income of the Alabama, among other vessels. Thirty thousand of those certificates have been sold and are now outstanding. Under these circumstances it would be inequitable to deprive the holders of these receiver certificates of a substantial part of their lien. So far as the court can now see, no damage would accrue to the holders of the bonds secured by the preferred ship mortgage in denying the prayer of the petition."

The court corrected these findings in one respect, saying: "My attention has been called to the fact that my original memorandum, dated July 8, 1931, contains a statement, not based upon the evidence, to the effect that the first mortgage has been reduced from $700,000 to $164,800 and that there is no clear and satisfactory showing that the holders of bonds secured by the first mortgage have scant security for the payment of their lien. The criticism of the memorandum insofar as relates to no showing of scant security is correct. However, with this part of the memorandum deleted, the court adheres to its original conclusion."

▮ Two questions are presented for our determination: First, has a mortgagee, whose mortgage is a preferred mortgage under the Ship Mortgage Act of 1920, an absolute · right to institute foreclosure proceedings upon its mortgage upon the mortgagor's default when the property covered by the mortgage, consisting of a steamship, is in the possession of a court of equity, whose jurisdiction has been properly invoked, and which is conducting the affairs of the debtor company for which receivers have been appointed and when it appears that there are subsequent lienholders and a large number of unsecured creditors? Second, if the first question be answered in the negative, was there, upon the facts shown by the record, an abuse of discretion on the part of the court in refusing temporarily mortgagee's application for leave to foreclose its mortgage or to segregate the earnings of the Alabama and hold the same for the protection of the mortgage bondholders?

The answer to the first question must be in the negative. In reaching that conclusion, it is, as it must be, conceded that appellant would have a clear right to foreclose on the steamship Alabama in admiralty as provided by the Ship Mortgage Act of 1920, but for the fact that, before any foreclosure suit was begun, a court of equity, upon suit by a creditor suing for itself and all others similarly situated, had upon a proper showing assumed jurisdiction, appointed receivers who had taken possession of the property of the debtor company, were operating its business, and to do so had caused receivers' certificates to be issued and sold, and after the court had made provision for the filing and hearing on the claims of unsecured creditors.

This court had occasion to consider, in the recent case of Ex parte Crandall, 53 F.(2d) 969, a somewhat similar question. The legal question there presented was the extent to which a railroad employee's right to sue under the Federal Employers' Liability Act was restricted or limited by the action of a court of equity, which upon a proper showing restrained the prosecution of such action in a court of another state where the railroad was doing business. In passing upon this question, this court there stated: "The general right of Indiana citizens to begin actions of this nature, wherever service of process on the defendant could be had, was always potentially qualified by the jurisdiction of equity to restrain the citizen from commencing the action in a foreign jurisdiction where to do so would unreasonably, inequitably, and unfairly harass, oppress, or defraud the defendant."

It is hardly believable that Congress intended to restrict or impair the general equity jurisdiction of a court administering the affairs of a debtor company, either insolvent or temporarily embarrassed, when it passed the Ship Mortgage Act of 1920. While undoubtedly the Ship Mortgage Act of 1920 gave a mortgagee certain rights which cannot be impaired, it nevertheless did not curtail the powers of a court of equity in a suit such as was here brought. Appellant's right to foreclose is dependent upon the consent of the court of equity whose receivers validly possess the property covered by the mortgage. Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 37 L. Ed. 815; Wabash Railroad v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327.

As to the second question, the one involving the abuse of the court's discretion in temporarily refusing appellant the right to foreclose its mortgage, we are not prepared to say on the entire record that there was an abuse of discretion. While certain facts persuasively pointed to the necessity of immediate foreclosure of the mortgage to adequately and fully protect the bondholders' interests, there were other facts equally persuasive which justified the position taken by the trial court. Not until after the 1931 season was closed could the court ascertain whether the hopes which underlay the belief that the 1931 business could be conducted at a profit were to be realized or to ripen into barren regrets. The District Court made it perfectly clear that its denial of the relief sought was only temporary. A new application could be made at any time. Its allowance would depend largely upon the existence of facts developed since the last application.

The court is not, of course, permitted to speculate with appellant's security on the "return of prosperity." Neither should the court ignore the rights of the junior lienholders and the general unsecured creditors in order that an adequately secured creditor might immediately "get his cash" through an untimely sale of the property. Moreover, in the present case it appeared that receivers' certificates were issued and sold with the knowledge of the appellant. These certificates were made subject to the lien of the appellant's mortgage. They were retirable from the earnings of the business during the 1931 season. If appellant were intending to foreclose its mortgage immediately, it should have made its application before or at the time the receivers' certificates were authorized.

The refusal of the court to segregate earnings of the steamship Alabama during the season of 1931 was not erroneous and perhaps not in fact prejudicial. Appellant asked that the receivers be ordered to make no disbursements from said fund, "except such disbursements as are necessary for the actual costs and expenses incurred by said receivers in conducting the operations of said Alabama and in maintaining and protecting said Alabama, * * *." If appellant intended through such segregation to avoid the payment of the receivers' certificates, it was asking for something which under the disclosed facts it was not entitled to receive. If payment of the receivers' certificates were included in "disbursements" necessary for the cost and expense incurred in conducting the

operating of the steamship and maintaining and protecting said Alabama, then no harm could possibly come to the appellant through a denial of its petition. For, if there be any balance left, the court in disposing of it will undoubtedly see that payments are made upon the claims in such order as the law applicable thereto provides. In re Wakey (C. C. A. 7) 50 F.(2d) 869.

The orders appealed from are affirmed.