**TEXAS CO. et al. v. HAUPTMAN.**

**No. 8311.**

Circuit Court of Appeals, Ninth Circuit.

Aug. 2, 1937.

Thomas A. Thacher and Thacher, Jones & Casey, all of San Francisco, Cal., and R. K. Barrows, of Los Angeles, Cal., for appellants.

Sterling Carr, Irving H. Frank, and Nathan H. Frank, all of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appeal has been taken from an order directing appellants to release a steamship from libel proceedings in the United States District Court for the Southern District of Texas, and restraining appellants from proceeding further with the libel proceedings.

The Charles Nelson Company, a California corporation, hereinafter called the debtor, entered into a written agreement with one Rogers, as trustee for a Delaware corporation to be thereafter organized, under date of January 17, 1936. By the terms of that agreement, the debtor agreed to sell to Rogers the steamship Marsodak for $55,000, payable $10,000 in cash upon the signing of the agreement, and the balance in twelve equal quarterly installments commencing three months after the date of delivery. It was agreed that the balance should be secured "by a first preferred mortgage on the vessel," and that the "delivery shall be free and clear of all liens and encumbrances whatsoever." The contract further provided that the debtor agreed to sell two additional vessels to Rogers on the same terms and conditions, and in connection therewith it is provided in the contract that "It is the intention of the parties that the Seller shall sell and the Buyer shall buy three vessels under the terms of this agreement, and if the Seller is unable to make delivery of three vessels

to the Buyer in accordance with the terms of this contract then this contract shall become null and void and of no effect at the end of three hundred days from the date hereof. * * *"

The vessel Marsodak was delivered on the date of the contract. The preferred mortgage was executed January 22, 1936. On February 1, 1936, the debtor assigned the preferred mortgage to a third party.

On February 5, 1936, the debtor filed a petition for relief under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). On the same date the lower court entered an order approving as properly filed, the above petition, and continuing the debtor in possession of its property. The order also provided "That the commencement or continuation of suits against the debtor are hereby enjoined and stayed until after final decree herein."

On May 15, 1936, the lower court appointed appellee trustee of the debtor's property. The order contained a provision enjoining and restraining all persons, firms, and corporations from attaching, levying upon, or enforcing liens upon, disturbing, interfering with, selling, removing, transferring the assets of the debtor, or the possession of appellee, and restraining the institution or prosecution of actions, proceeding in equity, admiralty, or bankruptcy, against the debtor or the trustee. There was a proviso to this provision "that the Court may, upon notice and for cause shown, permit any judicial proceeding to enforce any lien upon the Estate of the Debtor."

On July 7, 1936, the third party to whom the preferred mortgage had been assigned transferred a $20,000 interest in the mortgage to the debtor. On July 18, 1936, appellant, the Texas Company, a California corporation, by a libel filed in the federal court in Texas, caused seizure of the vessel sold Rogers, by a libel asserting a lien against such vessel for oil supplied it between August 1, 1935, and December 31, 1935. On July 23, 1936, the trustee filed a petition praying for an order discharging the vessel from the custody of the Texas marshal. On the same date an order was entered requiring appellants to appear on July 24, 1936, and show cause why the order should not be granted.

After hearing on July 24, 1936, the lower court entered an order that appellants "be and they are hereby directed to release forthwith the steamship 'Marsodak' from

the libel proceedings and process issued therein in the United States District Court for the Southern District of Texas." The order also restrained appellants from proceeding further with said libel proceedings and from instituting further proceedings without first obtaining an order of the court. The court further provided that the libel proceedings "are hereby stayed and enjoined pending the further order of" the court. From that order, this appeal was taken.

There are twelve assignments of error, all of which have been abandoned except the first four, which question the jurisdiction of the court to enter the order.

Section 77B provides that after a petition thereunder has been approved, "the court in which such order approving the petition * * * is entered shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section." 11 U.S. C.A. § 207(a).

Section 207(c) provides:

"Upon approving the petition * * * or at any time thereafter, the judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him * * * (10) * * * may enjoin or stay the commencement or continuation of suits against the debtor until after final decree; and may, upon notice and for cause shown, enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree."

Jurisdiction over the persons of appellants is not questioned.

Appellants contend that the Bankruptcy Act gives the court no "power to enjoin the enforcement of liens against property not a part of the bankrupt estate." Appellee contends that the mortgage on the vessel gave him a "special property interest" in the vessel.

The Ship Mortgage Act (46 U.S.C.A. § 911 et seq.) does not specifically state that a preferred mortgage lien is the same in nature as a maritime lien. We may assume here that the nature of the lien, as distinguished from the enforcement thereof, and other matters, is substantially the same as that of a maritime lien.

The court below had no jurisdiction to stay the continuance of the proceeding in Texas as a suit against the debtor, un-

der 11 U.S.C.A. § 207(c) (10), because the proceeding was not against the debtor, but in rem.

■ However, that section empowers the court to stay a proceeding "to enforce any lien upon the estate" of the debtor. Here, the estate of the debtor consisted of a mortgage lien. The Texas proceeding was not one to enforce a lien on the mortgage lien. The court, therefore, had no jurisdiction under that section.

■ It is provided under 11 U.S.C.A. § 207(a), that the trial court has "exclusive jurisdiction of the debtor and its property wherever located." If appellee had any property in the vessel, it is quite apparent that the Texas court could not have jurisdiction over such property, for such jurisdiction is given exclusively to the court below. Therefore, we must first determine whether or not appellee had any property in the vessel.

What is property? It is "the sum of all the rights and powers incident to ownership." Nashville, C. & St. L. R. Co. v. Wallace, 288 U.S. 249, 268, 53 S.Ct. 345, 350, 77 L.Ed. 730, 87 A.L.R. 1191. See, also, Bromley v. McCaughn, 280 U.S. 124, 136, 50 S.Ct. 46, 47, 74 L.Ed. 226. In 22 R.C.L. 37, § 2, it is said:

"The term 'property' has a most extensive signification, and in its strict legal sense means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or objects. But the word is often used to indicate the subject of the property or the thing owned, as a chattel or a tract of land. These things, however, though the subjects of property, are, when coupled with possession, but the indicia, the visible manifestations, of invisible rights, the evidence of things not seen. Much of the uncertainty and confusion observable in the decisions have arisen from overlooking this distinction; and such is the uncertainty of language that it is necessary to consider the context in order to determine the sense in which a particular word is employed, if it can ever be employed in more than one. * * *"

Following this, in section 3, it is said:

"Property in a determinate object as heretofore defined is composed of certain constituent elements, to wit, the unrestricted right of use, enjoyment, and disposal of that object. * * *"

It is thus plainly seen that when the word "property" is used, it may mean either the rights in a physical thing, or the physical thing itself, or both. What was intended in the statute before us? The controlling rule is stated in Fidelity & Deposit Co. v. Arenz, 290 U.S. 66, 68, 54 S. Ct. 16, 17, 78 L.Ed. 176, as follows:

"'Property' is a word of very broad meaning, and, when used without qualification, expressly made or plainly implied, it reasonably may be construed to include obligations, rights, and other intangibles as well as physical things."

There being neither an express nor an implied qualification, we must hold that the word as used in the statute includes both intangible rights and physical things. It is inconceivable that Congress intended to protect only a physical object, such as a stock of goods, and not protect an intangible, such as a debt.

It would seem that the foregoing is sufficient, for one of the rights of property, is that of disposal. Appellee had such a right under the mortgage lien. We need not rest the problem there, however, for the cases hereinafter cited show that a maritime lien vests in the owner thereof a right of disposal in the vessel.

In The Propellor Commerce, 1 Black (66 U.S.) 574, 580, 17 L.Ed. 107, and in The Maggie Hammond, 9 Wall.(76 U.S.) 435, 456, 19 L.Ed. 772, it is said:

"Process in rem is founded on a right in the thing, and the object of the process is to obtain the thing itself, or a satisfaction out of it, for some claim resting on a real or quasi proprietary right in it."

In The Rock Island Bridge, 6 Wall.(73 U.S.) 213, 215, 18 L.Ed. 753, it is said:

"A maritime lien, unlike a lien at common law, may, in many cases, exist without possession of the thing, upon which it is asserted, either actual or constructive. It confers, however, upon its holder such a right in the thing that he may subject it to condemnation and sale to satisfy his claim or damages."

In Merchants Mut. Ins. Co. v. Baring, 20 Wall.(87 U.S.) 159, 163, 22 L.Ed. 250, it is said that:

"* * * it is well-settled law that a maritime lien is a jus in re."

In that case the statement quoted from The Propellor Commerce, supra, is again stated. In The Glide, 167 U.S. 606, 624,

17 S.Ct. 930, 936, 42 L.Ed. 296, the court summed up a review of many cases therein, saying:

"A lien upon a ship for repairs or supplies, whether created by the general maritime law of the United States, or by a local statute, is a jus in re, a right of property in the vessel, and a maritime lien, to secure the performance of a maritime contract."

In The John G. Stevens, 170 U.S. 113, on page 117, 18 S.Ct. 544, 546, 42 L.Ed. 969, a review of many cases is made, and it is said:

"Accordingly, in our own law, it is well established that a maritime lien or privilege, constituting a present right of property in the ship, jus in re, to be afterwards enforced in admiralty by process in rem, arises, not only from a collision and for the damages caused thereby * * * but also for necessary supplies or repairs furnished to a vessel, whether under the general maritime law in a foreign port, or according to a local statute in her home port."

It is quite clear from the foregoing that appellee had a property right in the vessel over which the lower court had exclusive jurisdiction, which means that the Texas court had no jurisdiction thereover.

We believe, however, that the order appealed from is too broad. It directs appellants to release forthwith the vessel from the libel proceedings; restrains appellants from proceeding further with the the libel proceedings; restrains appellants from instituting further proceedings; and stays the proceedings in Texas. There are many other property rights in the vessel in addition to the one owned by appellee. Over such other rights, the lower court had no jurisdiction. The lower court may restrain interference with, or disposal of the right within its jurisdiction. If such right were so inseparable from the rights not within its jurisdiction, it might be that an order as broad as the one here made would be valid. However, it is apparent that appellee's right is separable, for the vessel may be sold, subject to the right of appellee. The order should be modified so that the proceedings are stayed, and appellants are restrained from proceeding further, or instituting further proceedings, only in so far as the present proceeding in Texas attempts to assert jurisdiction over appellee's right.

Reversed, with directions to modify the order in conformity with this opinion.

WILBUR, Circuit Judge.

I dissent.

The appellants have expressly waived all questions except the jurisdictional one. They do not complain of the order if it is within the jurisdiction of the trial court, or ask for a modification of it. I think the order should be reversed, but if not, should be affirmed and not modified. We cannot control the action of the admiralty court, either by enjoining the parties or otherwise. If we concede jurisdiction in the admiralty court to proceed to foreclose the lien of the appellant, the most that we can do is to control the disposition of the funds resulting from the sale of the vessel when they reach the hands of the successful litigant, hence, we should affirm or reverse in toto.

I think that the admiralty court has jurisdiction to proceed to foreclose the appellants' lien. There is no doubt that the $20,000 promissory note assigned to the trustee in bankruptcy is property subject to the control of the bankruptcy court. Furthermore, it is clear that the mortgage securing the note gives a property right in the ship, recognized in admiralty. The statute refers to it as a lien (46 U.S.C.A. §§ 925, 953(b), 971). It follows that the mortgagee has such a property interest in the ship that he can, and if he desires to foreclose, must proceed against it by seizure and condemnation in an admiralty court (The Thomas Barlum, 293 U.S. 21, 31, 55 S.Ct. 31, 32, 79 L.Ed. 176, as to jurisdiction of admiralty, and as to seizure see 1 Am.Jur. § 13, p. 553; § 39, pp. 568, 569, subject Admiralty; see same subject in 2 C.J.S., p. 103, §§ 46, 47, p. 106, § 49(b); Id., § 79(b) p. 162). I have no doubt that the bankruptcy court can control the disposition of the $20,000 mortgage note by sale thereof, but I think its control over the foreclosure of the appellants' lien which must occur in admiralty and in a proceeding in rem must be exercised through the trustee in bankruptcy who can appear in such proceeding to protect the interest of the bankrupt in the mortgage note. The admiralty court can determine the rights of all parties, including the bankrupt, in the rem—the ship.

If the bankrupt had been entitled to the possession of the ship, the right of possession would pass to the court and would be exercised through the trustee [as in the case of Consumers Co. v. Goodrich Transit Co. (C.C.A.) 53 F.(2d) 972], where the court of equity in possession of a ship in

an equity receivership was held to have authority to forbid a foreclosure of a preferred ship's mortgage for a reasonable period in order to facilitate the disposition of the whole matter in the equity receivership. Here the bankrupt could only secure possession of the ship and consequent jurisdiction over it by seizure in admiralty as an incident to foreclosure, hence, it seems to me it must be held that without possession of the ship, and without right of possession, the bankruptcy court must either enforce the lien of the ship's mortgage by seizure in the jurisdiction where it lies under process issued by the District Court of the United States, therein, or in the pending proceeding in that court. In other words, the property over which the bankruptcy court now has control is the indebtedness due to the bankrupt and not the ship, and that as to the ship the limited right of property therein is and must be asserted in the admiralty court having exclusive jurisdiction of the matter. We are dealing here with the problem of two United States District Courts, each by express statutory provision having exclusive jurisdiction, one in admiralty, the other in bankruptcy. We must either reconcile the two statutes or hold that the latter one repeals the former pro tanto.

My conclusion is that the bankruptcy court has no jurisdiction over the ship unless the right of the bankrupt is such that he is entitled to possession. The bankruptcy court, or rather, its trustee, steps into the shoes of the bankrupt. If the bankrupt would have been obliged to invoke the aid of an admiralty court to enforce his rights, so must the trustee in bankruptcy. The fact that reorganization proceedings under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) may be hampered by the foreclosure of a lien on the ship in another court cannot increase the rights of the bankrupt, and, consequently, of the bankruptcy court in the res, for the reasons I will now state:

It is provided in that section (11 U.S.C. A. § 207(a), Bankruptcy Act § 77B(a) that, "If the petition or answer is so approved, an order of adjudication in bankruptcy shall not be entered and the court in which such order approving the petition or answer is entered shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section, and shall have and may ex-ercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature."

The idea of exclusive jurisdiction in the bankruptcy court over the property of the debtor is not a novel one introduced for the first time in section 77B providing for reorganization proceedings, but is inherent in the nature and functions of a federal bankruptcy court which deals with the estate of the debtor as the res over which it has exclusive jurisdiction. See 6 Am.Jur. p. 535, subject, Bankruptcy, § 30, and cases cited, Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060; Lazarus, Michel & Lazarus, 234 U.S. 263, 34 S.Ct. 851, 58 L.Ed. 1305; Cameron v. U. S., 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448; Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 32 S.Ct. 96, 56 L.Ed. 208. That the jurisdiction of the bankruptcy court over the property of the debtor is dependent upon the possession of the res, either actual or constructive, has been uniformly held. 6 Am.Jur. pp. 531, 532, §§ 25, 26, 27; Tube City Min. & Mill. Co. v. Otterson, 16 Ariz. 305, 146 P. 203, L.R.A. 1916E, 303. The Supreme Court has recently stated the rule, speaking through Justice Sutherland, in Taylor v. Sternberg, 293 U.S. 470, at page 472, 55 S.Ct. 260, 261, 79 L.Ed. 599, where he said, of an ordinary bankruptcy proceeding:

"Upon adjudication in bankruptcy, all the property of the bankrupt rests in the trustee as of the date of the filing of the petition. Upon such filing, the jurisdiction of the bankruptcy court becomes paramount and exclusive; and thereafter that court's possession and control of the estate cannot be affected by proceedings in other courts, whether state or federal. Gross v. Irving Trust Co., 289 U.S. 342, 344, 53 S. Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215; Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 307, 32 S.Ct. 96, 56 L. Ed. 208; In re Diamond's Estate (C.C.A.) 259 F. 70, 73. This applies while the possession is constructive as well as when it becomes actual. Mueller v. Nugent, 184 U. S. 1, 14, 22 S.Ct. 269, 46 L.Ed. 405; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 432, 433, 44 S.Ct. 396, 68 L.Ed. 770."

In Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 553, 78 L.Ed. 1020, the Supreme Court had under consideration the juris-

diction of a bankruptcy court under section 77 of the Bankruptcy Act, added March 3, 1933 (47 Stat. 1474, c. 204, § 1, 11 U.S.C. A. § 205 note). This section contained a provision similar to that contained in section 77B (11 U.S.C.A. § 207) now under consideration, that is, that the bankruptcy court should "have exclusive jurisdiction of the debtor and its property wherever located" (11 U.S.C.A. § 205(a), in note page 199 of Cumulative Supplement of 1936). See Grand Boulevard Inv. Co. v. Strauss (C.C.A.) 78 F.(2d) 180. Justice Brandeis, in Ex parte Baldwin, supra, speaking for the court, treated the jurisdiction of the court under section 77 (11 U.S.C.A. § 205 note) as substantially the same as it had always been in bankruptcy, that is, jurisdiction dependent upon possession actual or constructive. He said:

"First, all property in the possession of a bankrupt of which he claims the ownership passes, upon the filing of a petition in bankruptcy, into the custody of the court of bankruptcy. To protect its jurisdiction from interference, that court may issue an injunction. The power is not peculiar to bankruptcy or to the federal courts. It is an application of the general principle that, where a court of competent jurisdiction has, through its officers, taken property into its possession, the property is thereby withdrawn from the jurisdiction of other courts. Having possession, the court may not only issue all writs necessary to protect its possession from physical interference, but is entitled to determine all questions respecting the same. Julian v. Central Trust Co., 193 U.S. 93, 112, 24 S.Ct. 399, 48 L.Ed. 629; compare Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 73 L. Ed. 669; Straton v. New, 283 U.S. [318] 319, 51 S.Ct. 465, 75 L.Ed. 1060. The jurisdiction in such cases is exclusive of the jurisdiction of other courts, although otherwise the controversy would be cognizable in them. Murphy v. John Hofman Co., 211 U.S. 562, 569, 29 S.Ct. 154, 53 L.Ed. 327. In bankruptcy, this rule applies regardless of whether the property is located in the district in which the bankruptcy proceeding originated. The injunction to protect its possession may issue either from the court of original jurisdiction or from the federal court for the district in which the state court suit is brought or in which the plaintiff in that suit resides. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 737, 738, 51 S.Ct. 270, 75 L.Ed. 645."

The Circuit Court of Appeals for the Third Circuit in Continental Bank & Trust Co. of New York v. Nineteenth & Walnut Streets Corporation, 79 F.(2d) 284, held that the bankruptcy court acting under section 77B of the Bankruptcy Act had no right to take possession of the debtor's real estate where a mortgagee was entitled to the possession (see, also, statement by Judge Cardozo, speaking for the Supreme Court in Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 222, 56 S.Ct. 412, 80 L.Ed. 591). The Circuit Court of Appeals for the Second Circuit held in Re Lake's Laundry, 79 F.(2d) 326, 102 A.L. R. 247, that the bankruptcy court, acting under section 77B, did not have jurisdiction over personal property purchased by the debtor under conditional sales contract.

Enough has been said to indicate that in general the exclusive jurisdiction of the bankruptcy court over the debtor's property is based upon actual or constructive possession of the property. In dealing with a conflict of jurisdiction between two federal courts, each claiming exclusive jurisdiction over the res, one under acts of Congress enacted under its bankruptcy power, and the other under acts enacted under its admiralty power, each being exclusive as to its jurisdiction within its proper sphere, it should be noted that the bankruptcy power over specific property has always been related to such property in the actual or constructive possession of the debtor. If not in the possession of the debtor, possession must be first secured by plenary action against third persons claiming the right thereto. So too, the admiralty jurisdiction over specific property must be secured by seizure. Under such circumstances, it seems clear that as between two counts asserting jurisdiction over a thing, the one first securing possession thereof has exclusive jurisdiction over it. This conclusion does not deprive the bankruptcy court of any essential right for its trustee can present the claims of the bankrupt to the property for adjudication in the admiralty court. It is true that this reasoning does not dispose of the contention that a mortgage under the Ship Mortgage Act has some property right in the ship which is transferred to the trustee in bankruptcy, nevertheless, as the only correlative right to the possession of the ship is by seizure by an admiralty court, it would seem logical to hold that the vessel having been seized by an admiralty court for condem-

nation the right of the mortgagee should be asserted in that court, particularly as the admiralty court also has exclusive jurisdiction of an action to enforce the mortgage. The bankruptcy court does not acquire exclusive jurisdiction over a ship because the debtor has a preferred ship mortgage thereon, notwithstanding the peculiar technical significance given to the holder of a maritime lien under admiralty law as a jus in re. The Propellor Commerce, 1 Black (66 U.S.) 574, 580, 17 L. Ed. 107; The Maggie Hammond, 9 Wall. (76 U.S.) 435, 456, 19 L.Ed. 772. Although it may be conceded that if both title and possession of the ship were in the trustee, the bankruptcy court could enjoin the enforcement of a maritime lien on the ship by an admiralty court, as was held by the Circuit Court of Appeals for the Seventh Circuit in Consumers Co. v. Goodrich Transit Co., 53 F.(2d) 972.

The order of the trial court enjoining the appellants from proceeding to enforce its maritime lien in the District Court of the United States for the Southern District of Texas should be reversed.