605 F.2d 476
 5 Bankr.Ct.Dec. 930, Bankr. L. Rep. P 67,265
 PIC REALTY CORPORATION, Plaintiff-Appellee,
v.
John EVANS, Receiver, the Vita Company, Vita Management Co.,
Vita Camelback Development Co., and Vita Baseline
Development Co., Defendants-Appellants,
and
Losee's Restaurant Equipment & Supply Co., Intervenor-Appellant.
PIC REALTY CORPORATION, Plaintiff-Appellant,
v.
VITA MANAGEMENT COMPANY et al., Defendants-Appellees,
and
Losee's Restaurant Equipment & Supply Co., Intervenor.
 Nos. 77-3475, 77-3544.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 2, 1979.
 
 Ronald E. Warnicke, Treon, Warnicke, Dann & Roush, Phoenix, Ariz., for Vita Management Co.
 William P. Mahoney, Jr., Sullivan, Mahoney & Tang, Phoenix, Ariz., for John Evans.
 Phillip E. VonAmmon, Fennemore, Craig, VonAmmon & Udall, Phoenix, Ariz., for PIC Realty.
 Appeal from the United States District Court for the District of Arizona.
 Before SNEED and HUG, Circuit Judges and FERGUSON*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 This case involves an appeal and a cross-appeal from a district court judgment vacating a portion of a bankruptcy court judgment and remanding the matter to the bankruptcy court. The district court found that the bankruptcy court did not have summary jurisdiction to set aside two settlement agreements entered into by appellant, PIC Realty Corporation (PIC), and appellees, Vita Management Company and Vita-Adams Investment Company. The district court held that the Vita interests did not have actual or constructive possession of the subject matter of the settlements, the Adams Hotel, at the time they petitioned the bankruptcy court for arrangement. 11 U.S.C. § 711 states that a bankruptcy court's summary jurisdiction extends only to property that, at the time of filing, is in the actual or constructive possession of the debtor or is owned by the debtor and is not subject to an adverse claim. We find jurisdiction over this appeal under 11 U.S.C. § 47 and affirm.
 
 I. THE ADAMS HOTEL DEVELOPMENT
 
 2
 To understand this case, it is necessary to know that the relationship between the parties to this suit began when Vita-Adams Investment Company formed a joint venture, Vita-PIC, with PIC Realty Corporation for the purpose of constructing the Adams Hotel in Phoenix, Arizona. Vita-Adams was one of several interrelated entities constituting the so-called "Vita interests."[1] The parent company, The Vita Company, is solely owned by Mr. and Mrs. Albert Spector, each of whom owns 50% Of the stock. (Clerk's Record at 274.) The Vita Company has six wholly owned subsidiaries, five of which are general partners in limited partnerships. Two of these subsidiaries are involved in this case Vita Management Company directly and Vita Development Company as the general partner of the Vita-Adams Investment Company, the co-venturer in Vita-PIC. Vita-Adams' only limited partners are Albert Spector and Albert Spector, Jr. (C.R. 275.) PIC is a wholly owned subsidiary of Prudential Insurance Company. (C.R. 1222.)
 
 
 3
 The Vita-PIC Joint Venture was formed August 28, 1973. Under the joint venture agreement, PIC contributed $5.5 million in equity, Vita-Adams contributed $300,000 in equity and the venture borrowed $12 million. The parties later modified the agreement to increase PIC's equity contribution to $6.8 million and the loan amount to $15.4 million. Under the agreement, Vita-Adams was obligated to pay all costs of constructing and furnishing the hotel in excess of the loan and capital contributions and to cover any operating losses in the first five years. While the hotel was under construction, Vita-PIC entered into a written agreement with Vita Management Company. Vita Management was not obligated to advance any funds for operating the hotel, and all obligations incurred by it in the performance of its duties were on the account of Vita-PIC.
 
 
 4
 By late 1974 a dispute had arisen between the joint venturers. Vita-Adams refused to contribute capital to finish and furnish the building. On November 7, 1974, PIC declared the venture dissolved and began administering its affairs as the liquidating venturer. As such it advanced funds for completion of the hotel. Vita Management became embroiled in the dispute as well. The parties negotiated toward a settlement which was finally reached July 10, 1975. The July 10 settlement agreements terminated the disputes between the parties. Under the terms, the parties released each other from liability, terminated the joint venture, and ended the management agreement with Vita Management. PIC received the title to the hotel. Vita Management entered into a lease for the hotel, received the liquor license and certain assets and liabilities associated with the hotel operation, agreed to complete and furnish the hotel at its own expense and received $1 million from PIC.
 
 II. THE BANKRUPTCY PROCEEDINGS
 
 5
 Things did not quite work out as apparently planned. On October 25, 1975, Chapter XI proceedings were filed in the bankruptcy court naming as debtors the corporate parent, Vita Company, Vita Management Company, and two of the other Vita subsidiary corporations. At that time Vita Management was operating the Adams Hotel under the lease entered pursuant to the July 10, 1975 settlement agreements. Vita-Adams Investment Company filed a Chapter XII proceeding in bankruptcy March 9, 1976.[2] Upon filing of these petitions, a stay became effective that prohibited anyone from interfering with the affairs of the debtors. On October 29, 1975, PIC notified Vita Management that, in accordance with the terms of the lease, the filing of a petition for an arrangement terminated the lease.[3] On November 6, 1975, PIC filed the complaint in bankruptcy court, which initiated the present proceedings, requesting the court to vacate the stay and to allow PIC to initiate necessary proceedings to obtain the eviction of Vita Management from the hotel premises. PIC also sought an award of interim administrative rentals and leave to exercise its contract right to buy back the liquor stock in trade and liquor license.
 
 
 6
 Vita Management and its receivers answered the complaint, but did not advance counterclaims. The receiver alleged that the relationship between PIC and Vita Management was that of equitable mortgagor and mortgagee. Vita Management also pleaded that theory and, in addition, that the lease was void because entered into under duress. After an abortive commencement of trial, Losee's Restaurant Equipment & Supply Company (Losee's) intervened and filed an answer to PIC's complaint February 26, 1976.[4] This answer alleged as an affirmative defense and counterclaim that the July 10, 1975 transfer of the hotel was void as a preference and fraudulent conveyance. In a timely fashion, PIC replied, asserting, Inter alia, that the bankruptcy court lacked jurisdiction over the assertions in the counterclaim.
 
 
 7
 On October 27, 1976, the bankruptcy court entered a lengthy judgment disposing of the combined proceedings. In summary form, the bankruptcy court:
 
 
 8
 1. Dismissed the complaint filed by PIC against Vita Management with prejudice;
 
 
 9
 2. Declared null and void the settlements of July 10, 1975 between PIC and Vita-Adams and between PIC and Vita Management as fraudulent conveyances under sections 67(d)(2), (a), (b) and (c) of the Bankruptcy Act and Arizona Revised Statutes §§ 44-1004 through 44-1007, inclusive;
 
 
 10
 3. Ordered the venture between PIC and Vita-Adams reconstituted as of July 10, 1975;4. Ordered PIC to reconvey to the venture all property formerly owned by the venture;
 
 
 11
 5. Declared that PIC had no interest in the venture's property, except as a joint venture;
 
 
 12
 6. Declared PIC to have no lien for the.$3.6 million in loans it made to the venture and that Vita-Adams had no liability for repayment of the loans to PIC;
 
 
 13
 7. Terminated the lease between PIC and Vita Management as of July 10, 1975;
 
 
 14
 8. Ordered the management agreement between the venture and Vita Management reconstituted as of July 10, 1975;
 
 
 15
 9. Ordered further hearings to determine whether the one million dollar settlement payment made by PIC to Vita Management should be secured under section 67(d)(6) of the Bankruptcy Act;
 
 
 16
 10. Ordered further hearings to determine the rights of creditors in the assets of the venture;
 
 
 17
 11. Awarded the receiver, intervenor, debtor and amicus curiae their costs.
 
 III. DISTRICT COURT DISPOSITION
 
 18
 PIC appealed the judgments for Vita Management and Vita-Adams to the District Court for the District of Arizona on October 28, 1976. The appeals were consolidated. The district court judgment of July 25, 1977 vacated a portion of the judgments of the bankruptcy court on the basis that the bankruptcy court lacked summary jurisdiction to void the settlement agreement and conveyances thereunder. The district court disagreed with the bankruptcy court conclusion that it had jurisdiction "over the subject matter of the Adams Hotel." It did hold, however, that the bankruptcy court has jurisdiction over Vita Management's leasehold interest in the hotel, and therefore remanded the matter for the bankruptcy court to adjudicate controversies over the rights of the parties under the terms of the lease, the validity of the lease, defaults under the lease and the right of PIC to initiate eviction proceedings.
 
 
 19
 The receiver and Vita interests filed their notice of appeal from this decision, challenging the district court's holding with respect to the bankruptcy court's summary jurisdiction over the settlement agreements. PIC filed a cross-appeal to attempt to avoid remand to the bankruptcy court by having this court lift the stay order against PIC's further legal proceeding against the Vita interests.
 
 
 20
 We believe the district court was right and our reasons are as follows.
 
 IV. BANKRUPTCY COURT JURISDICTION
 
 21
 In circumscribing the boundaries of the bankruptcy court's jurisdiction, questions within the "summary jurisdiction" of the bankruptcy court under section 2a(7) of the Bankruptcy Act, 11 U.S.C. § 11a(7), are treated differently from those within the "plenary jurisdiction" of state and federal courts under section 23 of the Act, 11 U.S.C. § 46. See 2 Collier on Bankruptcy P 123.02 (14th ed. 1976). The basic principles are quite simple. The bankruptcy court has summary jurisdiction over disputes regarding property within the actual or constructive possession of the bankruptcy court. But if a third party possesses the property and asserts a substantial adverse claim, the bankruptcy court has summary jurisdiction over that property only if the third party consents to such jurisdiction. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926). Absent such consent, a trustee must seek resolution of his rights against the creditor in a plenary action. 2 Collier on Bankruptcy, Supra, P 123.04.
 
 
 22
 The district court in this case concluded that the bankruptcy court lacked summary jurisdiction to determine the validity of the July 10, 1975 settlement agreements. The correctness of this holding depends upon two determinations. First, to what extent does section 311, 11 U.S.C. § 711, which confers upon the bankruptcy court jurisdiction "to determine controversies with respect to property owned by the debtor, or in the actual or constructive possession of the debtor or the Bankruptcy Court," In re Barasch, 439 F.2d 1393, 1395 (9th Cir. 1971), apply in this case. That is, did the Vita interests possess sufficient property to convey summary jurisdiction. Second, irrespective of section 311's application, did PIC consent to the summary jurisdiction of the bankruptcy court.
 
 
 23
 A. Possession of the Hotel.
 
 
 24
 At the time the Chapter XI petition was filed, Vita Management was operating the Adams Hotel under its lease. The legal interest that it held was limited to that leasehold interest. Prior to the settlement, Vita Management held only a management contract, no interest in the property itself. The bankruptcy court disregarded the various Vita entities in issuing its opinion. (C.R. 1246.) The court concluded:
 
 
 25
 This court has jurisdiction over the subject matter of the Adams Hotel, and all of its appurtenances, and it has the right to order the return of all the properties transferred in accordance with the July 10, 1975, Agreement, and it may cancel and restore all transactions as necessary to void the fraudulent conveyances.
 
 
 26
 C.R. 1246.
 
 
 27
 It is the further conclusion of this court that it has jurisdiction and authority to order a reconveyance of property though the property resides in an entity which is not before this court as a debtor or bankrupt and though the property is of a partnership interest.
 
 
 28
 C.R. 1252.
 
 
 29
 It is clear that the bankruptcy court based its jurisdiction over the July 10, 1975 settlements on Vita-Adams' interest in the Vita-PIC joint venture. This gave it jurisdiction over the hotel.
 
 
 30
 The district court rejected this approach.
 
 
 31
 (The bankruptcy court's) theory was that Vita-Adams was an alter ego of the debtors and, therefore, its joint venture interest was property of the debtor. The difficulty with this analysis is that the court also found that Vita-PIC had ceased to exist and all of its property had been transferred to PIC prior to the filing of the petition. . . . Since jurisdiction results from possession of property at the time of filing, Wikle v. Country Life Insurance Co., 423 F.2d 151, 153 (9th Cir. 1970), Vita-Adams' interest in the joint venture could not provide a basis for jurisdiction because it did not even exist at the time of filing.
 
 
 32
 C.R. 1735. The district court also rejected the contention that mere physical possession of the hotel sufficed to convey jurisdiction over the rights of the parties in the hotel, its fixtures and furnishings. Citing Texas Co. v. Hauptman, 91 F.2d 449 (9th Cir. 1937), the district court construed "property" in the statute to refer to the bundle of rights possessed by the debtor rather than the physical objects that are subject to those rights. C.R. 1736.
 
 
 33
 The Supreme Court has noted with respect to the scope of the bankruptcy court's summary jurisdiction:
 
 
 34
 . . . Congress has often left the exact scope of summary proceedings in bankruptcy undefined, and this Court has elsewhere recognized that in the absence of congressional definition this is a matter to be determined . . . after due consideration of the structure and purpose of the Bankruptcy Act as a whole, as well as the particular provisions of the Act brought in question.
 
 
 35
 Katchen v. Landy, 382 U.S. 323, 328, 86 S.Ct. 467, 472, 15 L.Ed.2d 391 (1966). In a Chapter XI context, the Second Circuit recently pointed out that:
 
 
 36
 Unlike ordinary bankruptcy, where liquidation is the object, the purpose of an arrangement is to revive a moribund business, not to bury it. See Susquehanna Chemical Corp. v. Producers Bank & Trust Co., 174 F.2d 783 (3d Cir. 1949) . . . (T)o achieve this goal without interference (requires unfettered jurisdiction).
 
 
 37
 Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1164 (2d Cir. 1979). But this court also has recognized the rights of those other than the debtor to a full plenary proceeding.
 
 
 38
 The power of a bankruptcy court to resolve adverse claims concerning the assets of the bankrupt's estate is indeed a power of imposing magnitude. Since it results in depriving adverse claimants of a plenary suit, we must be cautious lest we permit its extension to a situation that should not permit summary disposition.
 
 
 39
 Suhl v. Bumb, 348 F.2d 869, 871 (9th Cir.), Cert. denied, 382 U.S. 938, 86 S.Ct. 388, 15 L.Ed.2d 349 (1965). We must keep in mind the tension between the need to fashion broad remedies to revive the debtor and the need to protect the interests of third parties by preserving their right to plenary proceedings.
 
 
 40
 Vita interests were in physical possession of the hotel under their leasehold interest at the time their petition in Chapter XI was filed. This is not enough to give the bankruptcy court jurisdiction to resolve all claims to the hotel and its furnishings. We find that the "property" in the possession of the Vita interests, and thus within the summary jurisdiction of the bankruptcy court, consisted only of the leasehold estate in the hotel and the related liquor license. We also reject the notion that possession of the defunct partnership interest conveyed summary jurisdiction on the bankruptcy court.[5]
 
 
 41
 The two cases cited by appellees for the proposition that physical possession of a piece of real estate, notwithstanding lack of title, conveys summary jurisdiction over that property to the bankruptcy court are distinguishable. In Kapelus v. A Joint Venture, 377 F.2d 815 (9th Cir. 1967), a debtor owned and possessed property and then, prior to bankruptcy, transferred legal title to creditors as a security device for the debt while maintaining possession. When the creditors would not relinquish title in accordance with a repurchase agreement, the trustee sued in bankruptcy. This court upheld summary jurisdiction. In Robinson v. Mann, 339 F.2d 547 (5th Cir. 1964), also upholding summary jurisdiction, a debtor transferred real property to his children immediately prior to filing a bankruptcy petition, but remained in possession without any other legal arrangement. The bankruptcy court asserted jurisdiction to set aside the conveyance. In each of these cases, more than mere physical possession was involved. In each continued physical possession belied any change of ownership to another party; in each ownership actually remained in the debtor. In the present case, Vita Management had not previously owned the hotel, and it was in possession under a lease agreement.
 
 
 42
 The present case more closely resembles Texas Co. v. Hauptman, supra, and Texas & N. O. R. R. v. Phillips, 211 F.2d 419 (5th Cir. 1954). In the Hauptman case, this court recognized that when "the word 'property' is used, it may mean either the rights in a physical thing, or the physical thing itself, or both." 91 F.2d at 451. The Phillips court found that physical possession of the real property was insufficient to give the bankruptcy court summary jurisdiction over a railroad company to force specific performance of an option to purchase. In another context, the Supreme Court has recognized that at least in some cases bankruptcy courts do not have exclusive jurisdiction over the reversion right upon the termination of a leasehold held by a bankrupt. Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949). Each of these cases recognizes that a lessor holds only a portion of the legal interests of which real property consists.
 
 
 43
 We believe that under section 311 the "property" that the Vita interests possessed at the time the petition was filed consisted of Vita Management's leasehold interest. See In re Mimms & Parham, 193 F. 276 (W.D.Ky.1911). Vita Management's physical possession under the lease of the Adams Hotel did not broaden the court's summary jurisdiction into a wholesale inquiry of the past transactions of persons not before the court. Although title is not the key to summary jurisdiction, mere occupancy under a lease will not cast unfettered jurisdiction upon the bankruptcy court. The reversionary interest held by PIC under the July 10, 1965 settlements was not one of the rights possessed by Vita Management or by any other Vita interest. We can well understand the urge of the bankruptcy court to set to right the complex issues presented by this case. Bankruptcy courts do not have such comprehensive powers in summary actions. In this case Vita Management possessed a leasehold interest in the hotel and a liquor license; the bankruptcy court under section 311 therefore had summary jurisdiction only over those interests.[6]
 
 
 44
 B. Consent to Jurisdiction.
 
 
 45
 Appellees argue that by filing its complaint in the bankruptcy action, PIC consented to the bankruptcy court's jurisdiction:
 
 
 46
 There is hardly any question of law better settled than that . . . a court of bankruptcy has no jurisdiction, Without the consent of the adverse Claimant, to hear and adjudicate in a summary proceeding a controversy as to title of or claims upon property held adversely to the bankrupt estate, where such property came into claimant's possession prior to bankruptcy.
 
 
 47
 2 Collier on Bankruptcy, Supra, P 23.06(1) at 494 (emphasis added). Indeed, the Supreme Court held that a bankruptcy court has summary jurisdiction to order surrender of voidable preferences asserted and proved by a trustee in response to a claim filed by the creditor who received the preferences. Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Two consent issues are present in this case, whether as a matter of law PIC subjected itself to the counterclaims in the bankruptcy court by initiating this action and whether even if it did not, PIC failed to contest the jurisdiction of the bankruptcy court when the counterclaim was asserted.
 
 
 48
 1. Consent through filing.
 
 
 49
 PIC came into the bankruptcy court to ask it to lift the automatic stay over legal actions against Vita Management. It sought to exercise its right to evict Vita from occupancy of the hotel upon termination of the lease. PIC asked for administrative rentals for the period in which Vita Management possessed the hotel. The rentals were not claimed under the lease, which had been terminated, but for use and occupancy of the premises. In re Fredrick Meats, Inc., 483 F.2d 951 (9th Cir. 1973); S & W Holding Co. v. Kuriansky, 317 F.2d 666 (2d Cir. 1963). The broader questions surrounding the July 10, 1975 agreement were not raised in answer to PIC's complaint, but by Losee's Restaurant Equipment & Supply Co. when it intervened in the action.
 
 
 50
 It is clear that the bankruptcy court "may, upon a proper counterclaim, determine all the rights of the parties connected with and arising out of the transaction." 2 Collier on Bankruptcy, Supra, P 23.08(5) at 551. The very action of entering the bankruptcy court conveys consent as to the transaction. But this consent does not extend to "totally unrelated counterclaims." In re Bankers Trust Co., 566 F.2d 1281, 1288 (5th Cir. 1978). Similarly, a mere general appearance for the purpose of presenting claims and opposing other claims will not amount to consent to a summary proceeding instituted by the trustee to determine title to property acquired by the claimant prior to bankruptcy. In re Vadner, 17 F.2d 721, 722-23 (9th Cir. 1927).
 
 
 51
 PIC was not even presenting a claim to the bankruptcy court. It was, however, asking that court to recognize the termination of its lease agreement with the Vita interests. In so doing, PIC consented to the adjudication of counterclaims relating to that lease.
 
 
 52
 As the district court noted in its memorandum and order on rehearing:
 
 
 53
 The filing of the original Complaint did, however, constitute a limited consent to the bankruptcy court's exercise of jurisdiction. Since PIC sought to enforce its rights under the lease, it necessarily consented as well to a determination of the lease's validity.
 
 
 54
 C.R. 1850.
 
 
 55
 We agree with the district court that this was the full extent of PIC's consent given by its bringing this action.
 
 
 56
 2. Failure to object.
 
 
 57
 The appellees also argue that PIC's actions before the bankruptcy court demonstrate its willingness to try issues concerning the July 10, 1975 settlements. A jurisdictional defense in a summary action is merely a procedural right that may be waived if objection is not made in due time. However, in Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944), the Supreme Court indicated that participation in a summary action will not constitute waiver of objection if proper objection has been made. See 2 Collier on Bankruptcy, Supra at P 23.08(4). Moreover, this court has held that a general objection, even if inartfully phrased, is adequate if it indicates a desire not to be deprived of the right to plenary proceedings. In re Desert Paint & Supply Co., 479 F.2d 45, 47 (9th Cir. 1973).
 
 
 58
 We find that in this case PIC has objected to summary jurisdiction over disputes stemming from the July 10, 1975 settlements consistently. In its reply to the counterclaims of Losee's on March 5, 1976, PIC first objected to the bankruptcy court's jurisdiction. C.R. 398. This case thus is unlike In re U. S. Financial, Inc., 594 F.2d 1275 (9th Cir. 1979), in which no jurisdictional objections were raised in appellant's answer to the trustee's complaint. PIC also has objected to the bankruptcy court's jurisdiction over the counterclaim at other times, E. g., First Addendum to Pretrial Statement, C.R. 816, Opening Brief to District Court, C.R. 1395. The bankruptcy court, in holding that it had jurisdiction, stated that it made its decision despite the fact that:
 
 
 59
 (N)either Vita-PIC nor PIC is before this court as a debtor or bankrupt or has otherwise consented to the jurisdiction of this court for such purpose.
 
 
 60
 C.R. 1246.
 
 
 61
 The district court held that the bankruptcy court's finding of no consent was not clearly erroneous. We agree with its conclusions.[7]
 
 
 62
 We therefore believe the district court properly vacated the bankruptcy court order and remanded this matter to the bankruptcy court for it to proceed in accordance with the district court opinion.
 
 
 63
 AFFIRMED.
 
 
 
 *
 Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Appellant PIC argues on appeal that the bankruptcy court erred by treating all the various Vita entities as one the bankruptcy court held that the Vita entities were merely alter egos for the Spector family interests. The district court in its opinion stated:
 In its analysis of the jurisdictional issues the bankruptcy court relied in part on its finding that Vita-Adams and the named debtor should be treated as a single entity. See In re Equity Funding Corp., 396 F.Supp. 1266 (C.D.Calif.1975). Under the analysis of (this opinion) it is not necessary to determine whether or not the various Vita entities are alter egos for the purposes of 11 U.S.C. § 711 (1970). Since Vita-Adams could not have possessed an interest in Vita-PIC at the time of filing, the bankruptcy court's jurisdiction would not be expanded by treating Vita-Adams as part of the debtor.
 C.R. 1737-38.
 We agree that it is not necessary to treat this issue. For convenience, this opinion employs the term "Vita interests" in several places. Such use does not indicate acquiescence in the bankruptcy court's holding on this point.
 
 
 [2]
 The bankruptcy court chose to ignore the Chapter XII proceedings in its opinion (C.R. 1246). The court ordered the Chapter XII proceeding converted to a Chapter XI proceeding and proceeded to resolve all issues at once. The appropriateness of its actions has not been seriously challenged before this court
 
 
 [3]
 Subsequent notices of termination were served on Vita Management as a result of its failure to pay real property taxes and rent for November and December of 1975 and January of 1976
 
 
 [4]
 Losee's appeal to this court was dismissed by stipulation by order of this court on May 3, 1979
 
 
 [5]
 The appellees contend that Vita-Adams still had actual or constructive possession of an interest in the joint venture at the time of filing. They argue that under Arizona partnership law, PIC held this continuing interest in constructive trust for Vita-Adams. We reject their contention. Finding 29(a-b) of the bankruptcy court states that the joint venture was terminated. In addition, the district court noted that under Arizona law Vita-Adams could transfer its interest in the joint venture and that the bankruptcy court found such a transfer to have occurred. C.R. 1848. Nothing in De Santis v. Dixon, 72 Ariz. 345, 236 P.2d 38 (1951), requires a contrary conclusion
 
 
 [6]
 We also find that determination of ownership of the hotel is not a necessary step in the Chapter XI arrangement of Vita Management. Baker & Taylor Drilling Co. v. Stafford, 369 F.2d 551 (9th Cir. 1966). Therefore the bankruptcy court could not expand its summary jurisdiction on this basis
 
 
 [7]
 The district court also held that appellees were barred from arguing that PIC consented to jurisdiction because they participated in drafting the bankruptcy opinion, See Continental Life & Accident Co. v. Doig, 443 F.2d 27, 28 (9th Cir. 1971), and because they raised the issue for the first time in their petition for rehearing, See Anderson v. Knox, 300 F.2d 296, 297 (9th Cir. 1962). In light of our holding, we need not review these conclusions