**Coy L. WEAVER and Helen F. Weaver, Appellants,**

**v.**

**Richard M. HUTSON, II, Trustee of Landmark Inns of Durham, Inc., Appellee.**

**No. 71-1577.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1972.

Decided Feb. 28, 1972.

As Modified on Denial of Rehearing May 11, 1972.

Charles B. Nye, Durham, N. C. (Nye & Mitchell, Durham, N. C., on brief), for appellants.

William R. Winders, Durham, N. C. (Winders, Williams & Darsie, Durham, N. C., on brief), for appellee.

Allston J. Stubbs, Durham, N. C. (Stubbs, Biggs & Cole, Durham, N. C., on brief), for debtor, appellee.

Paul Gonson, Asst. Gen. Counsel, Securities and Exchange Commission (David Ferber, Sol., Michael E. Don, Atty., Securities and Exchange Commission, on brief), for appellee, Securities and Exchange Commission.

Before BRYAN, WINTER and RUSSELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

A creditors' petition under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq., was filed on September 3, 1969 by three debenture holders of Landmark Inns of Durham, Inc., a North Carolina corporation (Debtor). The petition was approved on September 12, 1969 and a trustee thereupon appointed by the District Court.

Among its assets Debtor held a lease dated March 27, 1964 for a term of 52 years upon the property of Coy L. Weaver and his wife, Helen F. (Landlords). The land had been acquired by Landlords in 1942 for $3100 and, at the commencement of the bankruptcy hearing, was valued at $150,000 without improvements. As envisioned in the lease, Debtor constructed and operated a motor hotel on the premises, the total appraised value of which, including land, fixtures, equipment and furniture, is approximately $2,000,000. Under the lease a minimum annual rental of $19,159 was payable in advance, with an additional year-end payment based upon a specified percentage of the gross income or net profit for the year.

Of the estimated initial construction cost of $925,000, $730,000 was obtained through a first mortgage made possible by Landlords' subordination of their reversion. The actual cost considerably exceeded the initial estimate, and in 1966 Debtor, lacking sufficient funds to complete the project, requested Landlords to join Debtor in procuring a second mortgage of $110,000. Thereafter, Landlords and Debtor executed a second deed of trust securing a note in that amount with a maturity date of September 1968.

In 1968 Debtor asked Landlords to subordinate their interest to yet another deed of trust, this one to be in the sum of $437,500. The request was declined by Landlords, and, after Debtor failed to pay the $110,000 second trust at maturity, Landlords, by letter dated November 18, 1969, notified Debtor of numerous breaches of the lease as well as the default in the second trust. In May of 1969 this obligation was purchased from the holder by the five major stockholders of Debtor.

Finally, after continually ignored warnings of both the numerous breaches and the delinquent second trust, on August 15, 1969 Landlords demanded immediate possession of the premises. Ten days later Landlords commenced an ejectment action in the appropriate State court and trial was set for September 3, 1969. Before the hearing the major stockholders, who had purchased the second trust, attempted to persuade Landlords to withdraw the eviction proceedings, offering in return to wait six months before foreclosing. Landlords refused. Three of these stockholders on September 2, the day before the ejectment action was to be heard, demanded payment of certain past due interest on the debentures held by them. Next day, simultaneously with the start of the State court trial, the three filed the

Chapter X petition as creditors by virtue of their debenture holdings. The eviction proceeding was thereupon held in abeyance.

Landlords then petitioned the District Court to declare the lease forfeited because of the alleged breaches, particularly the institution of bankruptcy proceedings under pain of the sanctions of paragraph 12 of the lease:

> "This lease shall be terminated by any act of the Tenant, the result of which would be to pass by operation of law, or otherwise, any interest of estate in the leased premises to any Trustee or Receiver in bankruptcy. . . ."

Landlords maintained, both in the District Court and here, that the filing of the Chapter X petition by the three debenture holders, who were also major stockholders and quite active in company affairs, was in fact an "act of the Tenant" under paragraph 12. Further, as justifying forfeiture, Landlords point to Debtor's tardiness in paying rent and percentages, the employment of auditors not of Landlords' choosing, and several other lease violations arising from corporate mismanagement.

The cause, with the Landlords' petition to the District Court, was duly committed to the Referee in Bankruptcy. He found that Landlords had accepted basic rentals covering periods of tenancy following the breaches. He concluded that, by acceptance of those rentals, which had been computed by auditors employed by Debtor, and by withholding objection to the auditors until after receipt of these payments, Landlords had waived any claim to termination for delays in payments or Debtor's selection of auditors.

He determined, too, that Landlords had failed to establish a breach under the forfeiture clause of the lease (paragraph 12). In the first place, he was of the opinion that it had not been violated because the recourse to Chapter X had not been an "act of the Tenant", but rather the act of the creditors. It is not necessary to discuss this conclusion, however, since the same result came about through another conclusion of the Referee. He said to permit Landlords to enforce a forfeiture would be grossly inequitable in view of all the circumstances, especially Landlords' acceptance of rents for Debtor's occupancy after invocation of paragraph 12.

Summarized, the bases of his refusal of forfeiture were that all rentals and percentages have been satisfied; that, through the bankruptcy trustee's assurance, Landlords have been relieved of any duty to pay the second trust of $110,000; that under the guidance of the trustee the motel is in successful operation; that Landlords' financial interests are not in jeopardy; that, as feared by the Securities and Exchange Commission, appellee, a forfeiture would cause complete loss to Debtor's creditors, stockholders and debenture holders; and, finally, that forfeiture would prove a windfall of about $1,000,000 for Landlords.

We have evaluated the Referee's findings and conclusions and are of the opinion that the District Court was right in adopting them, and affirming the decision of the Referee.

In holding the reception of post-accruing rents to be a waiver of lease violations, committed prior to the acceptance of the rents, the Referee is backed by the decisional law of North Carolina. Thus the lesson of Fairchild Realty Company v. Spiegel, Inc., 246 N.C. 458, 98 S.E.2d 871 (1957) is:

> " 'It is the generally accepted rule that if the landlord receive rent from his tenant, after full notice or knowledge of a breach of a covenant or condition in his lease, for which a forfeiture might have been declared, such constitutes a waiver of the forfeiture which may not afterwards be asserted for that particular breach, or any other breach which occurred prior to the acceptance of the rent.' " Id. at 466, 98 S.E.2d at 877, quoting Winder v. Martin, 183 N.C. 410, 411, 111 S.E. 708, 709 (1922).

This same principle bars forfeiture under a lease provision terminating the demise if the tenant procures the appointment of a trustee under the Bankruptcy Act. BJM Realty Corp. v. Ruggieri, 326 F.2d 281, 282–283 (2 Cir. 1964).

Section 70(b) of the Bankruptcy Act, 11 U.S.C. § 110(b), provides that "an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same shall be enforceable." While Finn v. Meighan, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945), declared the quoted section applicable to Chapter X proceedings, shortly thereafter Smith v. Hoboken, 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946), announced that a forfeiture clause was to be applied with an eye to its effect on the proposed reorganization plan, there a railroad under § 77 of the Bankruptcy Act, 11 U.S.C. § 205. The Court, at 131–132, 66 S.Ct. at 952, stayed effectuation of the clause, saying:

> "Moreover, it appears in the present case that forfeiture of the lease will deprive the debtor of all of its railroad properties. Whether a particular carrier should go out of business presents problems of primary importance to its security holders and perhaps to the public interest as well. If forfeiture of the lease is now declared, no plan of reorganization may be possible."

Refusal to allow forfeiture, although the lease contained a proviso therefor, was upheld by In re Fleetwood Motel Corporation, 335 F.2d 857 (3 Cir. 1964), on facts strikingly like those here. That opinion fully discusses § 70(b), supra, 11 U.S.C. § 110(b), its applicability to Chapter X proceedings and its nurture by Finn v. Meighan, supra, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945), as well as by Smith v. Hoboken RR, supra, 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946). Particularly instructive is this statement of the Court from Fleetwood:

> "We think that the rationale of Smith, coupled with the inherent equity powers of a court of bankruptcy, see McDonnell v. Bucks County Farms, Inc., 334 F.2d 763, 766 (C.A.3, 1964), provide abundant support for the conclusion of the district court in the case at bar. For here the public, represented by the Securities and Exchange Commission, has invested over a half million dollars in the debtor corporation. And obviously no plan of reorganization could be formulated if forfeiture were permitted, for the property which the landlord would obtain by such action is the only property of the debtor. . . . Suffice it to say that they [the facts] amply warranted the exercise of the equitable power of the bankruptcy court to deny the landlord's petition for possession of the premises." 335 F.2d at 862.

Notably, both *Smith* and *Fleetwood* accent that the result of the forfeiture there sought would be the complete emasculation of the reorganization because the forfeiture would remove the entire res from the estate of the debtor. *This would be precisely the effect of a forfeiture in the case at bar.* The reorganization would become wholly moot, since the sole property of Debtor would revert to Landlords.

The order of the District Court refusing Landlords' petition for forfeiture is affirmed.

Affirmed.

### ORDER DENYING PETITION FOR REHEARING

By petition for rehearing, appellants Weaver, Landlords, assert that this court denied their claim for forfeiture of the lease because by accepting rents accruing after Landlords' notification of termination under Paragraph 12, Landlords had waived their option to terminate it. The decision is erroneous, Landlords continue, because the bankruptcy trustee had stipulated with them that such acceptance of rents would be without prejudice to their case.

The answer is that neither the Referee, nor the District Court, nor this court refused forfeiture of the lease because of such acceptance. The fundamental bases of decision throughout was that the Landlords' insistence upon a forfeiture was highly unconscionable and inequitable in the circumstances—a demand for blood. The conclusion generally was that as a court of equity the bankruptcy court had the discretion and power to refuse enforcement of paragraph 12, and rightfully exercised this prerogative. See Fleetwood Motel Corp., 335 F.2d 857, 862 (3 Cir. 1964), cited in the opinion in the instant case. Furthermore, we declined forfeiture in the circumstances as defeating the reorganization aims of Chapter X.

The petition for rehearing is denied.