**In re ALABAMA FUEL SALES COMPANY, INC., Debtor.**

**ALABAMA FUEL SALES COMPANY, INC., Plaintiff,**

v.

**NEWPARK RESOURCES, INC. and Elpac, Inc., Defendants.**

**Bankruptcy No. 80–06320.
Adv. No. 84–0516.**

United States District Court, N.D. Alabama, S.D.

Nov. 27, 1984.

See also, D.C., 45 B.R. 365.

W.B. Hairston, Jr., Engel, Hairston, Moses & Johanson, P.A., Birmingham, Ala., for Newpark Resources, Inc. and Elpac, Inc.

Michael G. Kendrick, Gorham, Waldrep, Stewart & Kendrick, Jerry W. Schoel and Charles L. Denaburg, Denaburg, Schoel, Meyerson, Ogle, Zarzaur & Max, Birmingham, Ala., for the debtor, Alabama Fuel Sales Company.

## MEMORANDUM OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

Congress in the 1984 Bankruptcy Amendments and Federal Judgeship Act by 28 U.S.C. § 1334(a) effectively stripped bankruptcy courts of any jurisdiction to hear or decide anything. All jurisdiction is placed in the District Court with "original and exclusive jurisdiction of all cases under title 11." It would seem inappropriate to style cases "In the Bankruptcy Court." There is in truth no effective bankruptcy court with power to hear and determine cases.

Section 151 provides in Chapter 6 headed *Bankruptcy Judges:* "In each judicial district, the bankruptcy judges in regular active service shall constitute a *unit of the district court* to be known as the bankruptcy court for that district." All authority is placed in each bankruptcy judge as a judicial officer of the district court who "... may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of court, except as otherwise provided by law or rule or order of the district court" and in section 152(a) it is stated "bankruptcy judges shall serve as judicial officers of the United States district court established under Article III of the Constitution." No power is placed in bankruptcy courts.[1] In section 152(c) it is stated "Each Bankruptcy Judge may hold court at such places within the Judicial District, in addition to the official duty station of such judge, as the business of the court may require." *Quaere* —Is he sitting as a judicial officer of the district court, as a bankruptcy court, as a bankruptcy judge, or as a unit of the district court?

Very similar to sections 22 and 38 of the Old Bankruptcy Act, section 157 provides for a *reference* to bankruptcy judges for the District of "any or all *cases* under title 11 and any or all *proceedings arising in* or *related to* a case under title 11 ..." See matrix prepared by *Keith Lundin*[2] No definition is asserted by Congress under its definition of what a related proceeding is unless it includes everthing not a core proceeding. But *Northern Pipeline* is saturated with such definitions[3] and no satisfactory definition can be found.

By Lundin's matrix, a bankruptcy judge may "hear and determine" any matter however classified *with consent* of *parties.* Section 157(c).

In an article published in The ABI Newsletter, this writer attempted to review some former decisions dealing with jurisdiction by consent.[4] No case has been found where jurisdiction was denied after consent was obtained from the adverse party. See

---

1. Section 1334 does not mention bankruptcy courts or bankruptcy judges. We must look to section 157b for authority of a bankruptcy judge "to hear and determine" even a core matter. The section is discussed as purely a procedural statute.

2. Lundin, *The 1984 Bankruptcy Amendments: Holes in the Matrix,* Norton Bankr. L. Adviser, 1984, No. 11, Article 1.

3. *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

4. Coleman, *Quo Vadis? An Echo from the Past,* 2 Am. Bankr. Inst. Newsletter, Spring/Summer 1984 at 6.

*Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Apparently, under section 23 of the 1898 Act, the adverse party ceased to have a bona fide adverse claim after he gave his consent to jurisdiction. Possibly *Cline v. Kaplan,* 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944) could be construed as an exception.

However, these cases were decided without the construction and influence of *Northern Pipeline.*[5] *Congress in the 1984 Bankruptcy Amendments enumerated and declared its definition of core proceedings. In some instances, the writer questions whether Congress has not violated the admonitions of the Supreme Court in* Northern Pipeline *by ignoring basic guidelines in granting to bankruptcy judges right to hear related matters reserved only to Article III Judges.*

Must not Congress' assertion and definition of core matters be examined in the light of *Northern Pipeline?* The bankruptcy judges' sought from Congress an enumeration and catalogue of matters that could properly be heard and determined by a non-Article III Judge, and we should therefore not be critical of the effort. However, the Constitution must be reckoned with.

Can a core matter become such simply because Congress has so designated it? A good example would be a preference action or fraudulent transfer case which is on the facts not really a core matter. Does consent render such a proceeding a core matter or is the defendant estopped to later question jurisdiction?

Does consent confer substantive jurisdiction where none existed before? Congress does not attempt to define core matters, but names them.

Exploring section 1334 further, we find District Courts "shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in*

or *related to* cases under title 11. Keith Lundin in his matrix breaks down *arising in* and *arising under* in different categories. However, he comes to the same result both procedurally and jurisdictionally so that for all practical purposes they could be put in the same category as far as the 1984 Act is concerned, whether deemed core or not core.

Background and experience in each instance is found in the former emergency rule,[6] but especially in the decisions.[7] Each term must be reviewed and studied in light of *Northern Pipeline.*

However, the most applicable part of 1334 to this case is found under (d). 1334(d) reads:

> The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate.

The subject matter of this case is a twenty (20) year lease of an operating coal facility in the State of Kentucky. Possession may be in *Newpark* or in *Elpac* jointly with the debtor. The debtor has heretofore assigned some of the rights under the lease to *Little Creek Coal Company,* now Elpac, but reserved to debtor the prime and prior right to ship its coal through the facility to the exclusion of Elpac and Newpark. The leases contained clauses prohibiting or restricting the right of assignment without consent of the other party. Now debtor seeks to assign the lease to Pyramid Coal Company over the vigorous objection of Elpac and Newpark who assert lack of jurisdiction in the bankruptcy judge and the United States District Court for the Northern District of Alabama and object to the summary and expedited nature of the proceeding which the bankruptcy judge is treating as just a sale of an asset. The

5. Decided June 28, 1982.

6. Adopted by District Courts at the behest of the Chief Justice and conference of Senior Circuit Judges.

7. *See,* Carlson, *Are the Jurisdictional Provisions of the Bankruptcy Amendments of 1984 Constitutional,* Norton Bankr. L. Adviser, 1984, No. 9, Article 1, and cases cited therein.

debtor's whole future and the success of its chapter 11 reorganization depends on the consummation of its sale to Pyramid promptly. The declared purpose of the defendants is to slow down and obstruct the sale and to prevent its consummation. The debtor asserts that it is merely a sale of assets of the estate which is essential to the accomplishing of a Plan for the payment of its creditors, which it has a right to make under section 365(C)(2) of the Bankruptcy Reform Act of 1978.

The matter does not involve merely a debtor and creditor relationship. Rather, it involves a dispute between a bona fide adverse third party or parties who hold assignments of the very lease in litigation. Third parties may be in adverse possession of the real estate involved with an investment of possibly Two Million Dollars under an assigned lease in which the assignor agreed not to attempt to assign again to another party without consent of the first assignment. Under which slot of the matrix does this issue fall? Should the court look only to the 1984 Act or must it also examine the admonitions of *Northern Pipeline* to determine the bankruptcy judges right to hear and determine?

The matter clearly "arises in" the case, but may not be a core matter. It is not clearly a "related" matter because it falls under the influence of section 365(c).

Perhaps now, in view of the above discussion, we are ready to consider the facts of the case at hand in an effort to answer this jurisdictional problem and the Court makes the following Order.

### ORDER

This matter being heard the 8th and 13th days of November, 1984, on Notice of Private Sale by the Debtor-in-Possession of certain leasehold interests in real estate on which is located a coal barge loading facility on the Green River in Ohio County, Kentucky; which Notice of Private Sale was issued by this Court to all scheduled creditors having filed claims and Newpark, Inc. and Elpac, Inc. and their attorneys on the 10th day of October, 1984; and on the written objections as filed by SouthTrust Bank of Alabama, National Association (formerly Birmingham Trust National Bank) and the written objections of John P. Whittington, Trustee in the bankrupt estates of Big Bull Coal Company, Inc. and C M & C Coal Company, Inc. and the objections of Elpac, Inc. and Newpark Resources, Inc. as made orally in open Court.

The Court on oral hearing, arguments of counsel, the testimony of W.E. Albin, Jr., President of Alabama Fuel Sales, Inc., Debtor-in-Possession, and the hereinabove Memorandum Opinion, does find as follows:

■ 1. The District Court for the Northern District of Alabama, Southern Division has jurisdiction in this proceeding in that the property, the subject of the proposed sale, is an asset of the estate. This jurisdiction is based on those jurisdictional grants of title 28 U.S.C. § 1334 and title 28 U.S.C. § 157.

■ 2. The sale, the subject of the instant proceeding, is a sale governed by title 11 U.S.C. § 365(f) and arises in the administration of the above Debtor estate. ˙

3. That the leasehold, the subject of the sale, is such that it may be assigned under applicable law.

4. The lease has, since the filing of the instant bankruptcy case, been assumed by the Debtor-in-Possession.

5. The Court does find adequate assurance of future performance by the assignee, Pyramid Mining Company, Inc., a wholly owned subsidiary of First Mississippi Energy Corporation, a public corporation listed on the New York Stock Exchange.

6. The leasehold interests of Alabama Fuel Sales are subject to a perfected security interest in favor of SouthTrust Bank, securing a post petition indebtedness owed to SouthTrust in the approximate amount of $65,000, who does not object to the sale.

■ 7. The leasehold and the rights under the leasehold are property of the estate.

8. The leasehold and the rights under the leasehold can be sold by assignment. *In re Huntington, Ltd.* 654 F.2d 578 (9th Cir.1981).

9. The Debtor has the right to assign the leasehold and the rights under the lease and the sale is essential to a proper consummation of a Confirmed Plan in this case.

10. Neither Newpark, Inc. nor Elpac, Inc. has shown any potential injury by the assignment of the leasehold by the Debtor, but to the contrary, from the evidence and the language of the lease both Newpark, Inc. and Elpac, Inc. will obviously benefit economically from the sale by assignment.

11. That during the term of the lease prior to this day the facility has not been used very much by any of the parties except during the coal strike. See testimony of W.E. Albin, Jr.

12. That the sale by assignment to Pyramid Mining will vastly increase the use of the facility the subject of the lease to the benefit of all parties.

13. That the sale by assignment by the Debtor-in-Possession is in the best interest of the Debtor-in-Possession and the bankruptcy estate of Alabama Fuel Sales Company, Inc. and its creditors.

Accordingly, it is ORDERED, ADJUDGED, AND DECREED:

A. That the sale by assignment by Alabama Fuel Sales Company, Inc., Debtor-in-Possession, of its leasehold interest in that property described as:

A certain tract or parcel of land, lying in Ohio County, Kentucky, being on Green River at the mouth of Lewis Creek, bounded as follows: Beginning at a stone on the banks of Green River Northwest Corner of Lot No. 2: thence North 57 East 112 rods to a stone on the bank of Lewis Creek, thence down said Creek with its meanderings 53 rods when reduced to straight line to the Iron Bridge across said Creek: thence continuing down said Creek as it meanderings South 47–½ West 47 rods when reduced to a straight line: thence North 80 West 27–½ rods: thence South 12 East 34 rods: thence South 68–½ West 34 rods to Green River: thence up Green River with its meanderings 39 rods when reduced to a straight line to the beginning, twenty-nine (29) acres. All coal and mineral rights previously reserved.

to Pyramid Mining Company, Inc. for the sum of $50,000 cash and specified future tonage royalties of $.50 per ton for each 2000 pound ton of coal delivered over the facility by Pyramid Mining Company, Inc. or for the benefit of Pyramid Mining Company, Inc. or any other entity owned or controlled by Pyramid Mining Company, Inc., its parent or any other related entity is hereby CONFIRMED. The rights of all secured parties are preserved in the proceeds of sale and in the future royalties to be paid including such royalties, fees, or charges due Elpac and/or Newpark.

B. As a condition of such confirmation, any further assignment or sale of the leasehold by Pyramid Mining Company, Inc., in whole or in part, shall not relieve Pyramid Mining Company, Inc. of the obligation for payment as stated above and recited in the proposed Sales Agreement from Alabama Fuel Sales Company, Inc. to Pyramid Mining Company, Inc.

C. That the proceeds of the sale, the subject of this Order, shall be held by the attorneys for Alabama Fuel Sales Company, Inc. in an insured interest bearing account subject to the liens of SouthTrust Bank, Elpac, Inc., and Newpark Resources, Inc., if any are asserted, pending further orders of this Court.

D. That the Debtor-in-Possession shall forthwith execute any and all documents necessary to effect the sale as described herein and do all other things normal and necessary for the consummation of said sale.

This Order shall become operative and effective when ratified and confirmed by a Judge of the United States District Court.